Oliver D. Smith
7 Aldenham Road
Radlett, Hertfordshire
WD7 8AU, England
+ 44  07769176821
oliveratlantis@gmail.com

Pro se

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVER D. SMITH<br><br>Plaintiff,<br><br>vs.<br><br>SUBSTACK INC.,<br>JOHN DOE<br><br>Defendants. | Case No. 3:24-CV-00727-AGT<br><br>**SECOND AMENDED COMPLAINT** |

## **PARTIES**

**1.** Plaintiff.

   **Name**: Oliver Dean Smith

   **Address**: 7 Aldenham Road, Radlett, Hertfordshire, WD7 8AU, England

   **Telephone**: +44 07769 176821

**2.** Defendants.

   Defendant 1.

   **Name**: Substack Inc.

   **Address**: 111 Sutter Street 7th Floor, San Francisco, CA 94104, United States.

   **Phone**: (571) 730-9882

Defendant 2.

**Name**: John Doe (anonymous owner of cancelwatch.substack.com).

**Address**: Unknown.

**Phone**: Unknown.

## JURISDICTION

3. The lawsuit belongs in federal court under **diversity jurisdiction** because the Plaintiff does not live in the same state as the defendants and the amount of damages is more than $75,000.

## VENUE

4. Venue (San Francisco Division) is appropriate in this Court because: (a), a substantial part of the events the Plaintiff is suing about occurred in this District and (b), at least one of the Defendants (Substack Inc.) is located in the District, but location of John Doe is unknown.

## INTRADISTRICT ASSIGNMENT

5. This lawsuit arose in San Francisco, the location of Substack's headquarters and its business address; meaning it should be assigned to the San Francisco/Oakland Division of this Court.

## PROCEDURAL HISTORY

6. Plaintiff Oliver D. Smith ("**ODS**") originally filed a claim of negligence against Substack Inc., ("**SI**") and a claim of libel against John Doe, anonymous owner of a blog/newsletter hosted by Substack named Cancel Watch ("**CW**"). Plaintiff filed his original complaint on 7 February 2024 (ECF No. 1). ODS amended his complaint on 4 April 2024 (ECF No. 21). Defendant SI filed a motion to dismiss against the amended complaint (ECF No. 31) on 24

May 2024. ODS filed an opposition on 28 May 2024 (ECF No. 32) and SI, filed a reply, on 21 June 2024 (ECF No. 34). On August 12, 2024, the Magistrate Judge Alex G. Tse granted SI's motion to dismiss for the negligence claim but allowed ODS to file a second amended (and final?) complaint to plead new/additional claims (ECF No. 38, "C. Other Claims", p. 7) one of which ODS touched upon in his opposition – promissory estoppel (ECF No. 32). The Plaintiff has dropped his negligence claim, while pleading two new claims against SI.

## SETTLEMENT AGREEMENT OFFER

**7.** On 13 August 2024, ODS sent SI's attorneys a reasonable settlement agreement offer[1] and pointed out he would proceed with the promissory estoppel claim unless SI were willing to settle, giving them time to respond. On 16 August 2024, SI replied by email to baselessly[2] accuse ODS of sending "fraudulent DMCA takedown notices" and legally threatening him with a counterclaim (under Section 512(f)) for damages and attorney's fees) if he continued "pursuing" the promissory estoppel claim and did not drop the lawsuit. Plaintiff considers this threat to be frivolous; ODS' DMCA takedown notices were in good faith, but why has Substack Inc., waited over a year (when the notices were sent) to now complain about them? Why was no counter-notice even filed? Finally, Plaintiff has no assets, and his only income is a disability benefit. He could not pay the filing fees ($400) for this case and was granted application to proceed in forma pauperis (ECF No. 10) meaning if SI wins a counterclaim which is doubtful – the victory will be pyrrhic since ODS will not be able to pay damages or legal costs as he has no assets. It is ODS' opinion SI are engaging in vexatious behavior to dissuade him from filing a second amended complaint; it has a better chance of success.

---

[1] The offer was for Substack, to disclose the identity of the anonymous CW blog/newsletter owner.

[2] No evidence whatsoever was provided for this accusation which the Plaintiff strongly denies.

**STATEMENT OF FACTS**

8. Substack Inc., is an interactive computer service and platform for subscription newsletters and blogs on the internet; it currently hosts a blog, Cancel Watch (CW). In June 2023, ODS was blackmailed and harassed by CW by email and on social media (Twitter aka X). There is no doubt that CW sent these threats since they were sent from the same email and social media account, mentioned as being owned by CW (see: cancelwatch.substack.com/about).

9. CW's Twitter account (@watch_cancel) was deleted not long after ODS had reported it for harassment; secondly, the email[3] they used was disabled by Proton Mail for breaching their ToS – after ODS emailed proof CW was engaging in harmful and criminal activity. On 27 June 2023, ODS had reported the blackmail incident to police (Hertfordshire Constabulary).

10. CW threatened ODS with a "massively embarrassing" article that would destroy his life and reputation unless he complied with their demands to delete articles on another website (RationalWiki). After ODS refused to give in to CW's blackmail (he could not do what they wanted anyway[4]), the article about him appeared on the CW blog. The article was published on 5 July 2024 but was updated on 7 and 11 July 2024. CW did not leave the Plaintiff alone with the publication of the article: they sent him death threats, created fake accounts of him across the internet and contacted his father/father's employer (by emailing the CW article) and have continued to harass ODS during these proceedings. CW further sent ODS abusive and disparaging messages including having a "pathetic existence" and "no meaningful life".

---

[3] Disabled by Proton Mail on 4 August 2023 (cancel.watch.account@proton.me).

[4] ODS has no access or ability to delete articles on RationalWiki. He lost his admin rights in 2019.

**11.** Plaintiff sent SI, 20-30 complaints and queries by email between July and September 2023, as well as one letter in the post on 23 October 2023. None of his complaints or queries about CW and its suspended email address were responded to. SI also failed to respond to emails ODS had sent informing of a police investigation into CW's malicious activities and he was requesting urgent assistance (arguably, CW's failure to respond, impeded this investigation) including information on emergency disclosure – SI did not have the courtesy to respond.

**12.** Having not received any response from Substack, ODS tried contacting SI by phone, first in July 2023, again in August 2023, and later around the time he filed his original complaint (February 2024). However, the only phone number mentions on SI's site is disconnected. This was confirmed by a process server ODS hired to serve SI in March 2023, who phoned the same number but stated it was disconnected (ECF No. 7). Plaintiff's hired process server was also unreasonably denied entry into Substack's HQ (ECF No. 8). Plaintiff has shown this is the only place Substack mentions on its website to serve legal documents (ECF No. 36); refuting a misleading claim about this incident made by Substack (ECF No. 34, p. 5).

**13.** Overall, Substack refused to respond to ODS's complaints by email, post or phone, in other words, completely failed to communicate about these issues despite seriousness; ODS thus resorted to relying on communicating with Substack via their automated chat feature (under "support"[5]) when he discovered it. He first did this in February 2024, followed by in March, April and May (the chatbot feature was created in late January or February 2024[6]). Plaintiff recalls first accessing the chatbot days before his filed original complaint (7 February 2024).

---

[5] https://substack.com/support

[6] https://on.substack.com/p/support-for-writers

14. When typing the question in chatbot "Do you respond to complaints", the answer was an unambiguous "Yes, we respond to all complaints." Similarly, when typing the question "Do you respond to every complaint", the answer was same. The answers are very similar if not identical when asking, "Do you always [all of the time], respond to complaints?". Similarly, when ODS asked "Does Substack respond to emails?" the answer appeared: "Yes, Substack responds to emails"; the same for asking "Will you certainly respond to emails?" (ODS has screenshots of Q&A from May 2024). It is the same answer for "queries". These answers as statements are unambiguously promises in the sense of "tell someone you will certainly do something" or "act of saying that you will certainly do something" to quote a dictionary.[7] Despite this, SI breached its promises to ODS and did not respond to his emails, complaints, queries, etc., and failed to respond to more messages asking why they were ignoring him.

15. Substack further says it responds to reports (such as content violations) which is what ODS mentioned (with examples from May 2024) in his objection to motion to dismiss (ECF No. 32, pp. 13-14). Those were not responded to either (despite Substack saying it will respond and even suggesting to follow up by submitting more requests to get "updates" on reports).

16. Not long after ODS mentioned promissory estoppel and Substack's chatbot (ECF No. 32), Substack substantially changed their chatbot page to include a popup message which states: "Please review the Terms & Conditions to proceed" (with a tick box). The T&S is very new and has a brand-new page.[8] This is proven by the fact webpage captures of the same chatbot URL (on Internet Archive) show the pop-up message was not on the URL on 14 June 2024.[9]

---

[7] https://dictionary.cambridge.org/dictionary/english/promise

[8] https://substack.com/chatbot-tos

[9] https://web.archive.org/web/20240614043334/https://substack.com/support

17. The earliest webpage capture of the pop-up dates to 30 July 2024.[10] This undoubtedly means the pop-up and tick box about T&S appeared sometime between 14 June 2024 and 30 July 2024 (most likely at the end of June), weeks after ODS first raised concerns about promises on Substack's chatbot in these proceedings (ECF No. 32 [on 28 May 2024]); and raising an issue with the chatbot concerning where to serve legal documents in person (ECF No. 36).

18. The T&S[11] now suddenly states under: "**Chatbot limitations** – "Our support chatbot is an automated service provided as a convenience. You understand that support chats may provide inaccurate or incomplete information and are not a substitute for reviewing Substack's terms and policies" and points out: "Support chats are facilitated by and provided to a third-party service provider, Decagon.ai" and now cautions: "You understand that the support chat cannot speak for Substack, modify our terms or policies, or make any binding promises to you." This appears (especially the latter statement) to have been published to damage control in response to ODS highlighting promissory estoppel as well as problems or flaws with SI'S chatbot. At the very least, a reasonable person would conclude the timing of this was not a coincidence. There is no doubt the T&S for Substack's chatbot was recently created in June or July 2024.

## CLAIMS
### A. First Claim: Promissory Estoppel
### Substack Inc

19. Plaintiff's first claim against SI (Defendant 1) is promissory estoppel based on promises their "support" section of their site made through their chatbot between February and May

---

[10] https://web.archive.org/web/20240730002408/https://substack.com/support

[11] https://substack.com/chatbot-tos

2024, "Chat with Substack [Substack Support]" (substack.com/support) which ODS used. Substack clearly and unambiguously said they would respond to all emails and complaints when asked by ODS but they failed to carry out their promise. Plaintiff also has a screenshot of a discussion with chatbot when he was told to log in and again asked "Do you always respond to complaints?" (answering "Yes"). It should be noted that ODS had logged in to his account on nearly all occasions to ask chatbot questions if they respond to complaints and/or emails; the chatbot identified him in responses as "Oliver D. Smith" so there was a direct promise made from SI to the Plaintiff. Plaintiff has screenshots (May 2024) before Substack added their T&S/disclaimer and he remembers his earlier (February, March, and April) interactions with same chatbot meaning Substack cannot allege when ODS accessed the chatbot and asked questions the chatbot limitations disclaimer appeared at those times.

20. The Plaintiff maintains his claim for promissory estoppel passes the four-prong test under California law: "The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." (*U.S. Ecology Inc. v. State of California* (2005) 129 Cal. App. 4th 887, 901).[12] Firstly, the promises Substack made were clear and unambiguous about always responding to complaints and emails and were directly made to the Plaintiff when he interacted with the chatbot; he was even asked to log in his account under his real name (Oliver D. Smith) and identified his email. The same automated (AI) chatbot can be accessed currently to see the promises remain the same for the questions about whether SI will respond or always responds to complaints and emails (a clear "yes" to these questions).

---

[12] https://casetext.com/case/us-ecology-inc-v-state-of-california

**21.** Secondly, ODS was relying on these promises made by the chatbot since he had exhausted other methods (email, post, phone) to get a response from Substack to at least communicate; they ignored his emails and letters (their phone was disconnected), hence ODS resorted to asking questions in the chatbot. This reliance was under Substack's assistance or help since the chatbot appears on the "support" section of their website. ODS had grounds for relying on the chatbot as a declaration of assurance about SI's complaint or query procedure which he had no reason to believe at the time was false or inaccurate. Thirdly, this was reasonable and foreseeable reliance for the aforementioned reason(s); the disclaimer by SI about "chats may provide inaccurate or incomplete information" and "are not a substitute for reviewing Substack's terms and policies", did not appear on the chatbot from February to May 2024.

**22.** Fourthly, ODS maintains he has been injured by his reliance on the chatbot promises based on emotional distress (mental anguish). Plaintiff was promised that his complaints, queries and emails about serious issues and his concerns e.g., blackmail, harassment, an emergency disclosure request, and his report concerning CW's email,[13] were going to be responded to. None were, despite Substack's chatbot promising to ODS. Plaintiff has medical evidence for emotional distress – relying on these promises (on SI's chatbot) acted to his detriment.

**23.** In the absence of an independent or accompanying tort claim, emotional distress damages ("**EDD**") are not recoverable in a promissory estoppel claim (*Deli v. University of Minn.*,

---

[13] ODS emailed several reports about CW's sign-up email address on Substack being disabled. It is highly unusual SI did not respond or investigate considering CW's registered email was suspended. This is another reason ODS relied on the promise on the chatbot at the time that CW would respond.

578 N.W.2d 779, 782 (Minn. Ct. App. 1998))[14]: "emotional distress… [is] limited to those instances in which the breach is accompanied by an independent tort to insure that contract law is not swallowed by tort law." However, ODS relies on tort of deceit; CA Civil Code §1709 (based on[15] (2) negligent misrepresentation, (3) nondisclosure and (4) false promise) under §1710. [B. "Second Claim", below]) and argues for EDD to be awarded on this basis.

### B. Second Claim: Deceit
### Substack Inc

24. ODS' second claim against SI (Defendant 1) is deceit (under the CA Civil Code §1709), specifically: negligent misrepresentation, nondisclosure and false promise (§1710). The tort of deceit requires the following: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (*Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 974 quoting Witkin, Summary of Cal. Law (9th ed. 1988) Torts 676, p. 778). Plaintiff argues he can demonstrate these different elements.

25. Firstly, Plaintiff is aware of only a single lawsuit where a company was sued for negligent misrepresentation based on text from an automatic chatbot. This lawsuit was filed in Canada (not the US) but nevertheless has relevance (*Moffatt v Air Canada*, 2024 BCCRT 149).[16] A claim for negligent misrepresentation requires a duty of care in both US and Canada. In the Canadian lawsuit this was rather easily established because of Plaintiff's and Defendant's

---

[14] https://casetext.com/case/deli-v-university-of-minnesota-1

[15] Plaintiff does not include (1) intentional misrepresentation of fact as part of his second claim.

[16] https://www.canlii.org/en/bc/bccrt/doc/2024/2024bccrt149/2024bccrt149.html

"commercial relationship as a service provider and consumer" (26). The Plaintiff argues for Substack having a duty of care on a similar basis. SI does not solely provide users the ability to create free blogs/newsletters on their platform but enable paid subscription in which fees apply.[17] For this reason, SI's chatbot describes itself as a "*customer* support" (emphasis on customer) hence when asked (which is what ODS did in February and May 2024): "Am I a customer?", the answer was: "Yes, you are currently interacting with Substack's customer support, which means you are considered a customer or potential customer" (note that this answer remains the same today if asked). Therefore, the chatbot identified itself as customer support and it was treating ODS as a customer or potential customer when he accessed the chatbot. Furthermore, when logged in, the chatbot described ODS as a customer: "Yes, you are a customer with a verified email address". It would appear from this that the SI chatbot conflates users with a non-paid subscription and paid subscriptions (Plaintiff is the former).

26. Based on inaccurate or untrue statements in the chatbot (already mentioned in First Claim i.e., answers as promises Substack will always respond to emails and complaints, when they never did) the Plaintiff reasonably believes he has a claim for negligent misrepresentation – the chatbot was and still is defective and answers with inaccurate statements. However, when ODS accessed it with relevance to his claim (February to May 2024) this predated the recently added disclaimer: "You understand that support chats may provide inaccurate or incomplete information and are not a substitute for reviewing Substack's terms and policies." To sum up, ODS maintains he has a strong argument for negligent misrepresentation because Substack made statements on their website (chatbot) they did not know were true or false

---

[17] https://support.substack.com/hc/en-us/articles/360037607131-How-much-does-Substack-cost

- 11 -

and had "no reasonable ground for believing it is true" (§1710) which they (in June or July 2024) later admitted with a disclaimer. In other words, SI failed to exercise reasonable care or competence to communicate information that is correct and this has harmed the Plaintiff.

27. Secondly, Plaintiff's argument for non-disclosure (defined by §1710 as "The suppression of a fact, by one who is bound to disclose it") is based on Substack only introducing their ToS for the chatbot and disclaimer on chatbot limitations ~6 months after the chatbot was created. Substack introduced it after ODS highlighted severe flaws (ECF Nos. 32 and 36) to damage control; they indisputably failed to disclose that their chatbot potentially provides inaccurate information when ODS accessed the chatbot dated from February to May 2024.

28. Thirdly, Plaintiff reasonably believes that Substack made promises on their chatbot about responding to ODS's complaints and emails "without any intention of performing" (§1710). This is based on their defective chatbot which made a false promises to Plaintiff which have already been detailed above. These promises were made to ODS from February-May 2024.

### C. Third Claim: Defamation
### John Doe

29. Plaintiff retains Defendant 2 (John Doe) for the same claim in his original and first amended complaint: defamation. ODS has repeatedly requested to SI that they disclose to him details of the CW owner, but they have refused and are protecting the anonymity of a blackmailer who is under police investigation; reasons for this immoral protection are speculated below. The owner of the CW blog has paid subscription(s), so SI do have their private information; Substack presumably additionally stores the geo-location and IP-address of the blackmailer.

**30.** CW's blog post about the Plaintiff is titled "Oliver D. Smith."

**31.** The post contains dozens of false statements about the Plaintiff that are defamatory per se including describing him as a "British internet stalker", "Smith was a neo-Nazi", "expressed support for "Columbine High School shooters", "extreme right", "argued for… Holocaust denial". None of these statements are true but are a concoction of evidence-free assertions, misattributed quotes and heavily quoted out of context forum posts from 15-20 years ago when Plaintiff was a teenager; these descriptions are further a total misrepresentation of the Plaintiff's political views which have never been remotely "extreme right" or "neo-Nazi".

**32.** The post falsely claims ODS "was an active member of Stormfront" (a neo-Nazi website). This is false and libellous; Plaintiff was never a "member" of this racist message board nor does the post present any evidence ODS was a member. The post goes on to falsely accuse ODS of sacking academics from their jobs including Noah Carl, Emily Willoughby and Bo Winegard. Plaintiff is not responsible or involved in any academic losing work or firing them. Plaintiff had no involvement with any campaign or petition to fire these academics. His name or signature was not on any petition nor does he support so-called cancel-culture. Plaintiff is wrongly accused with malice of having ruined the careers of numerous scholars.

**33.** Plaintiff is wrongly accused as being active on "white supremacist forums" (no evidence is presented for this unsubstantiated claim). The post falsely accuses plaintiff of writing the following message: "I hope that Carl loses his job". Plaintiff never wrote this, nor does CW substantiate ODS wrote or sent it. The falsehoods and defamatory claims have caused harm to plaintiff and there are many more malicious lies and smears in the post not here quoted.

## IDENTITY OF JOHN DOE

**34.** The Plaintiff does not have concrete evidence or proof yet as to the identity of the John Doe Defendant (who remains anonymous). Nevertheless, Plaintiff suspects the John Doe who is the blackmailer and owner of the CW blog/newsletter hosted by SI, is an individual named Emil Kirkegaard ("**EK**") aka William Engman,[18] who is mentioned in the post. Plaintiff has evidence that links Kirkegaard to the Cancel Watch blog/newsletter, but it is not enough to identify him as the owner. This evidence is the following: (a) the post discloses some private information about Kirkegaard he did not post publicly anywhere (this includes information about US Customs and Border Protection once searching his laptop for child pornography), (b) the post mentions the fact ODS is involved in litigation with Kirkegaard but does so in a biased way favoring Kirkegaard (despite the fact ODS won the libel lawsuit EK filed), (c) the owner of CW prior to publishing the post had blackmailed ODS to remove a few articles on RationalWiki, including Emil Kirkegaard's,[19] (d) Kirkegaard was one of the people to mutually follow CW's (Twitter aka X) account before it was deleted and has promoted CW in tweets, finally (e) Kirkegaard on his personal Substack blog/newsletter has linked to CW.

**35.** Plaintiff believes that the main reason SI will not disclose CW's identity is because Emil Kirkegaard is a popular blogger/newsletter on their platform with over 7700 subscribers – if it was publicly revealed he owned the CW blog and is a blackmailer this would decrease traffic to the website and almost certainly decrease paid subscriptions. SI refuse to unmask the owner of CW and protect owner's anonymous identity, despite evidence points to EK.

---

[18] Emil Kirkegaard legally changed his name to William Engman on 1 May 2021 but continues to use his birth name on his Substack blog/newsletter: www.emilkirkegaard.com (last accessed 19.08.2024).
[19] https://rationalwiki.org/wiki/Emil_O._W._Kirkegaard

**CONCLUDING REMARKS**

36. The judge has decently granted ODS leave to amend to plead or add new claims including for promissory estoppel (ECF No. 38, "C. Other Claims", p. 7): "Smith is not categorically foreclosed from amending his complaint with additional claims" and he has done that here in his second amended complaint for promissory estoppel and deceit against Substack Inc. This appears to have upset SI whose attorneys legally threatened ODS with a counterclaim if he proceeded with his second amended complaint and did not drop the lawsuit. Plaintiff still intends to file a Doe subpoena since SI have been uncooperative and refuse to provide John Doe's details; it is advisable to save time and costs if they did disclose this information.

37. The judge noted that "The Court, however, will not foreclose the opportunity for Smith to address these deficiencies in his pleadings for claims independent of treating Substack as a publisher, but this is a very challenging approach based on the current pleading." (ECF No. 38, "A. Immunity under the Communications Decency Act", p. 6). In response, ODS has tried his hardest to address these deficiencies with his new claims which he believes do not treat SI as a publisher of third-party content and thanks the judge for the chance to amend.

**DEMAND FOR RELIEF**

38. Plaintiff demands a public apology by Substack Inc., for promising ODS they would always respond to complaints and emails when that was false and based on inaccurate information on their chat-bot which is defective.

39. Plaintiff demands Substack to pay $100,000 damages for emotional distress.

40. Plaintiff demands unspecified punitive damages based on Substack's deceit.

41. Plaintiff demands John Doe to pay $500,000 general damages for humiliation and mental or emotional anguish plus unspecified punitive damages (for extreme outrageous conduct).

## DEMAND FOR JURY TRIAL

**42.** Plaintiff does **not** want or demand a jury trial and case instead is to be decided by a judge.

Dated: 19.08.2024 (19 August 2024)

                                            Respectfully submitted,

                                            Oliver D. Smith,
                                            Pro se.

Plaintiff will file a separate (electronic) certificate of service.